## KATIE BOYCE et al., Respondents, v. THE ROYAL CIRCLE, Appellant.

### St. Louis Court of Appeals, March 17, 1903.

1. **Insurance: FRATERNAL BENEFICIARY SOCIETY: BY-LAWS: PRESUMPTION OF KNOWLEDGE OF POLICY-HOLDER: PAYMENT OF DUES.** Members of fraternal societies holding policies of insurance therein, are presumed to know their by-laws and regulations in regard to payment of dues, and to conform to them.

2. ———: ———: ———: ———: WAIVER. Local secretaries of fraternal insurance societies have no power to waive payment of dues, or set aside any other essential feature of the contract.

3. ———: ———: ———: ———: ———. Where it is expressly provided by the by-laws of a fraternal insurance society, that if members remain in default in their monthly dues or per capita tax thirty days after the same were due, they thereby elect to terminate their membership in the order and to stand suspended; also not to hold the order for any liability, and surrender all their rights as beneficial members, and these by-laws were in force when the certificate of insurance was issued, and was accepted by the insured as a part of his contract, then the local secretary of the order is powerless to impair the obligations of such contract of insurance.

4. ———: ———: ———: ———: ———. And the spontaneous action of a local secretary of a fraternal insurance society in accepting dues from suspended members, contrary to the constitution and by-laws of the society, whether the acceptance be due to ignorance or complaisance, does not, *ipso facto*, reinstate the insurance and can not have that result unless the settled rules of law governing contractual obligations are set aside as to contracts of fraternal insurance.

5. ——: ——: ——: ——: WAIVER, ON WHAT GROUND. It is, however, true a course of business may be tolerated by the chief officers of an order by which a local officer may become vested with authority to waive prompt payment of dues, or to waive other regulations.

Appeal from Texas Circuit Court.—*Hon. L. B. Wood-side,* Judge.

REVERSED AND REMANDED.

*Edwin S. Puller, John C. Lanphier* and *Covert & Covert* for appellant.

(1)   The petition of plaintiffs states that the certificate was issued to Henderson on condition (among others) that he comply with the rules and regulations then governing the circle and the benefit fund and that might thereafter be adopted by the supreme circle to govern said circle and fund.   These rules and regulations, known as by-laws, provide for the suspension of the member and the forfeiture of his certificate in two cases:   First, for failure to pay the semiannual per capita tax of seventy-five cents during the months of June and December of each year, and second, for failure to pay any monthly assessment (due and payable by the terms of the by-laws on the first day of each month) within thirty days from the date it becomes due and payable.   By his failure to pay the semiannual per capita tax of seventy-five cents during the month of June, 1900, he elected to withdraw and did withdraw from the society and forfeited all rights against the society.   His failure to pay the monthly assessments due and payable, respectively, on the first days of May, June and July, 1900, within thirty days from those respective dates, forfeited his membership and all rights against the defendant.   Borgraefe v, Knights of Honor, 26 Mo. App. 218; Scheele v. State Home Lodge, 63 Mo. App. 277; Miller v. Grand Lodge, 72 Mo. App. 499; State ex rel. v. Grand Lodge, 78 Mo. App. 547.   (2) Niblack on Benefit Societies, p. 536, states the law gov-

erning forfeiture of a policy for non-payment of assessments. The courts will enforce all reasonable laws and rules established by benevolent organizations for their guidance and for the regulation of their relief funds. Whitmore v. Knights & L. of H., 100 Mo. 47.

*Lamar & Lamar* and *W. L. Hiett* for respondents.

For some time, there was much confusion, and apparent contradiction, among the authorities with reference to how far and to what extent insurance companies and kindred societies would be bound by the act of the local agents or subordinate officers. The authorities were in this condition when the case of Nichol v. Insurance Company was certified from the Kansas City Court of Appeals to the Supreme Court. This case will be found in 144 Mo. 420. In that case Judge MARSHALL reviews all the authorities pro and con and reaches a conclusion that the weight of authority is to the effect that the acts of these agents are binding on the company. This is a fire insurance case, but the reasoning therein used and the principles laid down have been applied to life insurance and benefit societies. Jones v. Mutual Reserve Life Assn., 147 Mo. 1; Harness v. Mutual Insurance Co., 76 Mo. App. 410; McMahan v. Maccabees, 151 Mo. 522.

GOODE, J.—Plaintiffs state in their petition that they are the beneficiaries of a certificate of insurance in the defendant corporation, a fraternal order, organized under the laws of the State of Illinois, but authorized to do business in Missouri; that the contract of insurance was entered into between the deceased, Thomas J. Henderson, and the defendant on October 11, 1899, said Henderson being then a member of a local circle of the defendant company at Cabool, Missouri; that the consideration for the insurance was that said Henderson in addition to certain advance fees paid by him, should thereafter comply with the rules and regula-

tions of the defendant either then in force or subsequently enacted.

The benefit certificate was for one thousand dollars and bound the Royal Circle, on the death of Henderson, to pay to Katie Boyce, his mother, and Minnie Henderson, his sister, said sum upon satisfactory proof of the death of the assured.

Plaintiffs further state that said Henderson complied with all the terms and conditions of the contract as well as all the rules and regulations of the circle; that in August, 1901, while still a member of the Cabool Circle in good standing, he died with his certificate in full force and effect; that after his death the local circle, in violation of the laws of the order, refused to furnish blank forms whereon to make proof of the death of said insured, and also refused to pay the amount of the certificate or any part of it.

The answer admits the membership of Henderson and the contract of insurance in which the plaintiffs were beneficiaries; that Henderson died on the date alleged in the petition, but denies that he complied with his contract and the constitution, by-laws and rules of the society, or that he died a member of the association in good standing. The answer then sets forth certain provisions of the constitution and by-laws which obliged the members to pay the local secretary of their circle an assessment of varying amounts according to the age of the paying member, on the first day of each month, which money the local secretary was to forward to the supreme secretary; further, to create an expense fund, a semiannual per capita tax of seventy-five cents was required to be paid by each beneficial member on the first days of December and June of each year. Another article provided that a member who failed to pay this assessment for the benefit fund within thirty days from the date the same fell due or to pay his per capita tax during the months of December and June of each year, elected by such failure to pay, to at once

terminate his membership in the order and thereby stand suspended, and elected not to hold the order for any liability whatever, but surrendered all his rights as a beneficial member. The answer then alleges that Henderson, instead of complying with the rules and regulations, failed to pay any assessments after the month of April, 1900, and failed to pay his per capita tax during the month of June, 1900, and that in fact the last payment he made was for April of that year; that by reason of his failure to pay his monthly assessments or dues and the per capita tax, he had ceased to be a member and had forfeited his right to the beneficiary certificate before his death occurred.

A replication was filed which alleged the defendant waived any default on the part of the deceased in the payment of assessments or dues by afterwards retaining the dues or assessments when paid; also that all dues and assessments owing by the insured were duly tendered to the defendant.

At the trial plaintiffs rested after introducing a section of the constitution of the defendant order, requiring the local secretary of a circle to furnish blank proofs of death to the beneficiary of a certificate issued on a deceased member's life.

The defendant then took the burden, but was not permitted to prove much, nearly all the evidence it offered being excluded by the court for one reason or another. It did, however, succeed in proving by the local secretary of the Cabool Circle that Henderson did not pay in time his per capita tax or his monthly assessments for the months of May, June, July or August, 1900, but that about the tenth day of June the May assessment was paid by Minnie Henderson, who, also, we gather from the record, paid the assessments for said other months on the ninth day of August. Further, that two of those assessments were returned to her, to-wit, for June and July, while that for May was sent

to the supreme secretary, nothing being shown about the disposition of the August assessment. Certain sections of the constitution and by-laws were introduced in evidence, substantially of the tenor above recited from the answer, one providing for a per capita tax of seventy-five cents to be paid on the first days of December and June of each year, and the other for an assessment to pay death or disability claims which should be due and payable on the first day of each month.

This appeal seems to be here on an incomplete record; for it is alleged in the petition and admitted in the answer, that Henderson died in August, 1901, but no showing whatever is made of his payment of dues to the defendant company after August, 1900.

At the close of defendant's evidence the court instructed the jury to return a verdict for plaintiffs for the full amount of the certificate, apparently on the assumption that the local secretary of the Cabool Circle, by accepting payments of Henderson's monthly dues for May, June, July and August waived his default, restored him to membership and reinstated his certificate of insurance in full force and effect. That is a view of the law which we can not accept. Members of fraternal societies, holding policies of insurance therein, are presumed to know their by-laws and regulations in regard to payment of dues and to conform to them. In fact it is an express part of their certificates, ordinarily, that they shall comply with the by-laws in those respects and be bound by their provisions; and so it was of this one, the petition states. Nor have local secretaries power to waive payment or set aside any other essential feature of the contract. The life of these societies depends on the punctual payment of dues, and they can neither survive nor meet their obligations if punctuality in that respect is not observed and exacted. The power of any local secretary of this company is distinctly defined and limited in one of the clauses of the constitution. It was his

duty to collect assessments from the members of his local circle on the first of each month, as well as the per capita tax when it fell due, and to remit the same to the supreme secretary. He had also power to accept payment of monthly assessments and the per capita tax within thirty days after the last day of the month in which the same fell due, on a certificate signed by the delinquent member of his good health, and he could accept payment within thirty days later, that is within sixty days after suspension, on a certificate of good health from the local medical examiner. So far as appears from any clause of the constitution, he had no right to accept payment after default save on those terms. It was expressly provided that if members remained in default in their monthly dues or per capita tax thirty days after the same were due, they thereby elected to terminate their membership in the order and to stand suspended; also not to hold the order for any liability and to surrender all their rights as beneficial members. Those articles were in force when the certificate was issued to Henderson and he accepted them as part of a contract which the Cabool secretary was powerless to impair. Harvey v. Grand Lodge, 50 Mo. App. (K. C.) 477; Chadwick v. Triple Alliance, 56 Mo. App. (St. L.) 463; Scheele v. State Home Lodge, 63 Mo. App. (K. C.) 277; McMahon v. Supreme Tent Maccabees, 151 Mo. 522.

The spontaneous action of local secretaries of this and kindred societies in accepting dues from suspended members contrary to the constitution or by-laws, whether the acceptance be due to ignorance or complaisance, does not, *ipso facto*, reinstate the insurance and can not have that result unless the settled rules of laws governing contractual obligations are set aside as to contracts of fraternal insurance. It is true a course of business may be tolerated by the chief officers of an order by which a local officer may become vested with authority to waive prompt payment of dues, or to waive

other regulations. If a local secretary goes on for a considerable period accepting dues after default and remitting them to the supreme officers, who accept them with knowledge that they were paid out of time, these would be facts from which a waiver might be inferred; the waiver being founded on the notion that the member was led by the course of dealing, into believing it was all right to pay his dues after the regular date. McMahon v. Maccabees, supra. No such line of conduct was proven or attempted to be in this case. It was not shown that Henderson was ever in default prior to May, 1900, or that the local secretary was accustomed to receive his or any one's else dues after the month in which they should have been paid. In fact nothing was proven to mitigate the prima facie forfeiture of his membership and certificate. These contracts for fraternal insurance must be treated like other contracts, a reasonable interpretation given to them and the ordinary rules of law applied to their enforcement instead of a coddling interference in behalf of delinquent members. Provisions for forfeitures should be strictly construed but not abrogated. There was no proof made of any payment by Henderson, or any one in his behalf, of his per capita tax which fell due in June, or that the forfeiture for nonpayment was waived. Then too, the assessments for June and July were returned, while the one for May had been earned; because the suspension of Henderson's membership did not take effect until the end of that month.

Plaintiff's counsel insists there was no evidence of any monthly assessment having been levied by the company. There was no formal proof of that kind; but certainly the evidence tended to prove the monthly assessment of Henderson was fifty cents and that he so understood the matter, had paid at that rate and recognized his obligation to do so as each month came around. Be that as it may, the constitution itself provided for seventy-five cents semiannual per capita tax,

which was not paid in June, and according to the by-laws a forfeiture was worked by the failure to pay said tax as effectually as by failing to pay the monthly dues.

On the evidence in the record the peremptory instruction to return a verdict for the plaintiff was unwarranted, and therefore the judgment is reversed and the cause remanded. *Bland, P. J.,* and *Reyburn, J.,* concur.