WILLIAM ARTHUR DAY et al., Respondents, v. SUPREME FOREST, WOODMEN CIRCLE, Appellant.

St. Louis Court of Appeals.    Argued and Submitted April 7, 1913. Opinion Filed May 6, 1913.

1. FRATERNAL BENEFICIARY ASSOCIATIONS: Failure to Pay Assessment: Forfeiture of Certificate. Under a by-law of a fraternal beneficiary association, providing that if a member failed to pay a monthly assessment on or before the last day of the month, he should stand suspended and the certificate should be void, the failure of a member to pay an assessment on or before the last day of the month would *ipso facto* effect a forfeiture of all rights under his certificate.

Day v. Woodmen Circle.

2. **CONTRACTS: Forfeitures.** Although forfeitures are not favored, yet when a contract is a lawful one, is fairly made, and provides for a forfeiture, a forfeiture will be enforced.

3. **FRATERNAL BENEFICIARY ASSOCIATIONS: Members' Knowledge of By-Laws: Presumptions.** A member of a fraternal beneficiary association is conclusively presumed to know the provisions of its constitution and by-laws.

4. **————: Forfeiture for Nonpayment of Assessment: Waiver.** Where the clerk of a subordinate lodge of a fraternal beneficiary association accepted payments of a past-due assessment from the husband of a member who had been suspended for nonpayment of such assessment, on his statement that his wife was "all right," when, in fact, she was suffering from an illness from which she shortly thereafter died, and the supreme governing body of the association had no knowledge of the clerk's action, such action was not a waiver by the association of the provisions of a by-law, requiring, as a condition precedent to reinstatement after suspension for nonpayment of an assessment, that the member personally appear and apply for reinstatement within a stipulated time, or send to the clerk a written statement on an official form furnished by the association, to the effect that he or she is in good health.

5. **————: Action on Certificate: Forfeiture for Nonpayment of Assessment.** In an action on a certificate issued by a fraternal beneficiary association, *held* that insured was automatically suspended, under the constitution and by-laws of the order, for nonpayment of an assessment, and that she was not reinstated by virtue of an unauthorized acceptance, by the clerk of the subordinate lodge to which she belonged, of the past-due assessment, and that such acceptance was not a waiver of the provisions of the by-laws prescribing a different mode of procedure for reinstatement, inasmuch as the supreme governing body of the order had no knowledge thereof; and hence it is *held* that a recovery could not be had on the certificate.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

*Phil. H. Sheridan, Henry B. Davis* and *Charles Erd* for appellant.

REVERSED.

(1) The provision of the constitution and laws of appellant, and printed in the beneficiary certificate in issue, that a member failing to pay his assessments and dues on or before the last day of the month in which they are payable, should thereby become suspended, was self-executing, and required no affirmative action on the part of appellant. Boyce v. Royal Circle, 99 Mo. App. 349; Same case, 104 Mo. App. 530; Lavin v. A. O. U. W., 104 Mo. App. 1; Harvey v. A. O. U. W., 50 Mo. App. 477; Borgraefe v. Knights of Honor, 22 Mo. App. 127; Smith v. Woodmen of the World, 179 Mo. 134; Scheele v. State Home Lodge, 63 Mo. App. 277; Curtin v. A. O. U. W., 65 Mo. App. 300; Leech v. Order of R. R. Telegraphers, 130 Mo. App. 16; Burke v. A. O. U. W., 136 Mo. App. 456; Britt v. Woodmen of the World, 153 Mo. App. 707; Thompson v. Ins. Co., 104 U. S. 252. (2) (a) The clerk of the local grove, of which the insured was a member, had no power or authority to waive the requirements of the constitution and laws of appellant and the conditions of the beneficiary certificate, and his receipt of overdue assessments and dues did not effect the reinstatement of the insured. Boyce v. Royal Circle, 99 Mo. App. 349; Lavin v. A. O. U. W., 104 Mo. App. 1; Chadwick v. Order of Triple Alliance, 56 Mo. App. 463; Smith v. Woodmen of the World, 179 Mo. 136; Smith v. K. F. M., 36 Mo. App. 184; Curtin v. A. O. U. W., 65 Mo. App. 297; Burke v. A. O. U. W., 136 Mo. App. 457. (b) Under the provisions of said constitution and laws, and conditions named in said beneficiary certificate, the insured could only be reinstated by application made in person, while in good health, and on payment of all arrearages, or by sending a certificate, in writing, on the prescribed form of appellant, certifying that she was in good health, with the necessary amount to cover all such arrearages. See authorities, supra. (3) Where the local clerk of a subordinate lodge of a fraternal beneficiary association like the one in the

case at bar, has no power under its constitution and laws to expressly waive a forfeiture of membership, his course of conduct or dealing with any particular member will not establish the existence of that power in the absence of evidence of previous authorization or knowledge thereof by the society. Chadwick v. Order of Triple Alliance, 56 Mo. App. 463; Lavin v. A. O. U. W., 104 Mo. App. 1; Burke v. A. O. U. W., 136 Mo. App. 459.

*Ellroy V. Selleck* and *James J. O'Donohoe* for respondents.

(1) Proof that the beneficiary certificate was issued and that Martha C. Kirkland was dead established the plaintiffs' prima facie case. Winn v. M. W. A., 157 Mo. App. 1; Bacon, Ben. Soc. and Life Ins. (3 Ed.), sec. 414; Mulroy v. Knights, 28 Mo. App. 463; Stewart v. Legion of Honor, 36 Mo. App. 319; Force v. Knights of Honor, 41 Mo. App. 106; Chadwick v. Triple Alliance, 56 Mo. App. 478; Gruwell v. Knights & Ladies of Security, 126 Mo. App. 496. (2) (a) The law is not settled in this State in reference to the power of the clerk of the local grove to waive by-laws requiring the payment of assessments at a fixed time. Godwin v. K. L. of S., 166 Mo. App. 289; Andre v. Modern Woodmen, 102 Mo. App. 377; Cauveren v. Ancient Order of Pyramids, 98 Mo. App. 433; Courtney v. Relief Assn., 101 Mo. App. 261; Frame v. Woodmen of the World, 67 Mo. App. 127; Puhr v. Grand Lodge, 77 Mo. App. 47; Lewis v. Benefit Assn., 77 Mo. App. 586; McMahon v. Maccabees, 151 Mo. 522; Cline v. W. O. W., 111 Mo. App. 601. (b) Defendant's by-laws are not self-executing. Bange v. Legion of Honor, 128 Mo. App. 461; Seehorn v. Catholic Knights, 95 Mo. App. 233. (d) They are invalid. Godwin v. K. L. of S., 166 Mo. App. 289. (e) The by-law touching reinstatement is a snare in itself. Andrus v. Ins. Co., 168 Mo. 165. (f) The

clerk of the local grove had power to waive the health certificate. And if Martha C. Kirkland was suspended the receipt and retention thereafter of assessment and dues *ipso facto* restored her to membership. Godwin v. K. L. of S., 166 Mo. App. 289; Francis and Hunter v. A. O. U. W., 150 Mo. App. 347; Reed v. Bankers' Union, 121 Mo. App. 419; Wichman v. Ins. Co., 120 Mo. App. 51; Andrus v. Ins. Co., 168 Mo. 151. (3) The defendant requested a submission by the trial court of all the controverted issues in the case and it now asks this court to condemn the trial court for doing exactly what that court was requested by it to do. Under the law, we think, shifting positions is not allowed and the verdict of the jury is binding on both parties. Berkson v. Railroad, 144 Mo. 220; Dunlap v. Griffith, 146 Mo. 292-3; Frankenthal v. Assurance Co., 76 Mo. App. 19.

REYNOLDS, P. J.—Plaintiffs, sons of Martha C. Kirkland and as such named as beneficiaries in a certificate issued to Mrs. Kirkland, bring this action to recover $500, the amount contracted to be paid in case of the death of the member while in good standing as a member of the fraternity, if the death occurred within two years after the issuance of the certificate, the member having died within two years, and for the additional sum of $100 for a monument.

The answer, setting out the constitution, laws, etc., of the order, avers that Martha C. Kirkland was suspended for nonpayment of the assessment and dues for the month of June, 1909, within that month.

Denying suspension, the reply pleaded a waiver by defendant of the prompt payment of assessments and dues and alleged that they had been paid and that the suspension was void.

The petition demanded judgment for $600, with interest at the rate of six per cent per anum, as also ten per cent on the $600 as damages and a reasonable

attorney's fee for vexatious refusal to pay the amount of the certificate. At the trial before the court and a jury there was a verdict for plaintiffs for $636, being the principal debt and interest for one year. Judgment followed, from which, after interposing a motion for new trial and excepting to that being overruled, defendant duly perfected its appeal to this court.

The defendant is an ordinary fraternal beneficiary association, incorporated under the laws of the State of Nebraska, duly authorized to transact business as such in this State. Mrs. Kirkland was a member of what is known as Grove No. 56, State of Missouri, a subordinate lodge or "grove," as it is called, of the "Supreme Forest," as the governing body is called. It appears by the evidence in the case that about the 25th of July, 1909, the husband of Mrs. Kirkland went to the clerk or secretary of this grove and tendered him the assessments and dues for the months of May, June and July, 1908. The secretary asked him how his wife was. He answered that she was "all right." Whereupon the secretary took the money and gave the husband receipts for the three assessments. It appears that the secretary had himself paid the May dues and assessments. Retaining that out of the moneys paid him by Mr. Kirkland, he transmitted that for June and July to Omaha, Nebraska, to the governing body of the order. He appears to have done this about the 10th of August, 1909, accompanying them with the statement that Mrs. Kirkland had died in the meantime and that she was under suspension for nonpayment of the June dues and assessments. The supreme body thereupon returned all the money to the secretary, who, before the institution of this suit, tendered it to the beneficiaries, the two sons of Mrs. Kirkland, first in person and then by registered mail. The tender, however, was rejected.

Mrs. Kirkland died about the 4th of August, 1909. It appears that she was taken sick sometime in July

of that year, exactly when does not appear, but it does appear that on the 23d of July, her physician commenced attendance on her and continued in attendance until she died. It clearly appears that when, on July 25th, her husband told the secretary that she was "all right," she was in fact then under the care of her physician.

Among the conditions of membership contained in the application which was signed by Mrs. Kirkland when she became a member was this: "I agree to pay all assessments and dues for which I may become liable while a member of the order, as required by its constitution and by-laws." It was set out in the beneficiary certificate that it was issued and accepted subject to all the conditions on the back thereof and subject to all the laws, rules and regulations of the fraternity, and that it should be null and void if the member did not comply with all such conditions and with all the laws, rules and regulations of the Supreme Forest.   Another provision of the order was that every member, unless otherwise notified by the clerk of his or her grove, should pay to the clerk every month one assessment in the beneficiary fund, together with one monthly payment of the Supreme Forest dues, as levied, without notice, " and if he or she fails to pay either on or before the last day of the month, the member shall stand suspended and during such suspension his or her beneficiary certificate shall be· void." A further provision was that the knowledge of any officer or any of the members of the grove that the member had violated any of the provisions of the laws or the receipt by his or her grove of the payments of assessments and dues, or payment by him or her of the same, "shall not in any manner make the Supreme Forest liable on his or her certificate, when by these laws his or her certificate is made null and void and all his or her rights as a member forfeited." It was further required that if a suspended member shall

personally appear and apply for reinstatement within three months from the date of suspension, he or she shall pay all arrearages, and if in good health shall be restored to membership and the beneficiary certificate again become valid as soon as said payment shall have been received and recorded by the clerk of the grove; that immediately upon the reinstatment of the suspended member, the clerk of the grove shall notify the supreme clerk of that fact in writing upon the prescribed form, attested by the grove seal. A further section of the constitution and laws provides that if a delinquent member does not appear in person to pay his or her arrearages, he or she shall send to the clerk a written statement on the official form furnished by the Supreme Forest, to the effect that he or she is in good health as a condition precedent to reinstatement "and waiving all rights thereto if said written statement shall be found to be untrue. If the representations and statements made in said written statement be untrue, then said payment shall not cause reinstatement." Another section provides that no suspended member shall be reinstated until he or she shall have appeared personally before the clerk and paid all arrearages "while in good health, or shall have sent to the clerk the written statement, on the official form hereinbefore provided for, and such statement shall have been received by the clerk, and after examination thereof the clerk shall have determined that no investigation of the health or habits of the member is necessary."

It was conceded that Mrs. Kirkland had made all payments required of her up to and including May, 1909, and during that month was in good standing in the defendant order and her beneficiary certificate in full force and effect. It is in evidence in the case, and practically conceded, that she did not make the payment due for the month of June in that month but that this payment was made by her husband to

the secretary or clerk of the subordinate grove on the 25th of July, at which time, according to the undis-- puted evidence in the case, she was under treatment by her medical attendant and had been so for at least two days prior thereto, dying, as also before stated, on the 4th of August, following. She furnished no health certificate and the clerk of the subordinate council asked for none, but accepted the payment in reliance upon the truth of the statement of her husband that at that time she was in good health or "all right," as he expressed it. It also appears that between the 2d and 4th of May, June and July, respectively, the clerk of the grove had mailed to Mrs. Kirkland what is called a "cautionary notice," that the assessments for those three months were due, the May assessment on or before June 1st, the June assessment on or before July 1st, and the July assessment on or before August 1st. This cautionary notice called attention to the provisions of the constitution and laws which we have set out as to the effect of failure to pay within the time required, the steps necessary to reinstatement, etc., it being particularly set out that delinquent and suspended members must under no circumstances whatsoever be reinstated unless appearing in person or signing an application for reinstatement, and then only when in absolutely good health. The notice also stated the amount of dues and assessments then payable by the member.

It appears in evidence that on several occasions Mrs. Kirkland had been in default as to payments within the time required and that up to the one for June, 1909, the clerk of her grove had, on several occasions, paid these amounts himself as a personal accommodation to Mrs. Kirkland, remitting, however, in due time to the supreme governing body, without any notification to that body that the member had not paid within time.

It is not pretended that Mrs. Kirkland was not notified of the assessments as they fell due, nor is it pretended that any formal notice of suspension was ever given or sent to her.

Our court held in Borgraefe v. Supreme Lodge Knights and Ladies of Honor, 22 Mo. App. 127, that under the law of a benevolent society which makes the nonpayment of assessments for a given period after notice, operate as a suspension *ipso facto* of the delinquent member, it is not necessary that the suspension should be judicially determined by any judicatory of the order. That is to say, suspension occurs automatically when there is a failure to pay within the time prescribed. The decision in that case has been approvingly referred to in Smith v. Woodmen of the World, 179 Mo. 119, l. c. 135, 77 S. W. 862. Among other cases following the Borgraefe case on this point is Boyce v. Royal Circle, 99 Mo. App. 349, 73 S. W. 300, which see. Another case to the like effect and with many features common to the case at bar is Lavin v. Grand Lodge A. O. U. W., 104 Mo. App. 1, 78 S. W. 325. There, citing many cases supporting the rule, it is held, referring to the obligations of the members of a like order to pay assessments levied, that the failure of the member to pay within the time, if so provided by the constitution and laws of the order, *ipso facto* forfeits all right under the certificate, our court saying (l. c. 17): "A member holding a beneficiary certificate of the order, receives this notice (of the falling in of assessments and dues) once for all when he receives the certificate which, in effect, incorporates this law of the order into the contract of insurance, and a member, by accepting the certificate, agrees to pay the monthly assessments as required, . . . as a condition precedent to the continuance of his certificate in force." [See also Burke v. Grand Lodge A. O. U. W., 136 Mo. App. 450, 118 S. W. 493.] So we here

repeat, that under the contract between the parties, nonpayment of dues and assessments within the required period, *ipso facto* effected a forfeiture of all rights under this contract, for the relation of the parties to each other was one of contract, and is determinable as in the case of any lawful contract, and while the courts do not favor forfeiture, when the contract is a lawful one, fairly made, and provides for a forfeiture, forfeiture will be enforced.

It is held in the Borgraefe case, supra, that the unauthorized acts of a ministerial officer of a subordinate lodge cannot dispense with the duty of the member to comply with the laws of the order. This proposition is affirmed in Smith v. Woodmen of the World, supra, where it was urged that the clerk of the camp of which the deceased had been a member had by his course of dealing induced the member to believe that he was not required to pay his assessments and dues on the first day of the month and in consequence thereof the defendant had waived the forfeiture. It was in evidence in that case that the laws of the order provided that if, after the first day of the month and before he had forwarded his reports for that particular month, a member came before him, the clerk or secretary, and tendered payment while in good health, he could accept payment and report him in good standing. The defendant's by-laws expressly conferred authority upon the clerk to accept dues and assessments when so tendered by a member while in good health. Under this state of facts our Supreme Court held (l. c. 135 and following): "There was no waiver, therefore, of any condition or requirement of defendant's constitution and by-laws or of the contract of the deceased, through any act of the clerk of the local camp. The acceptance by him of assessments, under the circumstances, was compliance with and not modification or waiver of defendant's law. This being true, it is unnecessary to cite authorities showing that

the clerk, under the constitution and by-laws of defendant, was without power or authority to bind the company, or to waive any provision of its law by a course of conduct in accepting the payments of assessments of delinquent members."

A member of this organization is conclusively assumed to know these provisions and to know that the secretary of the subordinate lodge had no power to accept any payment save on compliance by the member with certain prescribed rules and regulations. "The spontaneous action of local secretaries," says our court in the Boyce case, supra (l. c. 355), "of this and kindred societies in accepting dues from suspended members contrary to the constitution or by-laws, whether the acceptance be due to ignorance or complaisance, does not, *ipso facto,* reinstate the insurance and cannot have that result unless the settled rules of law governing contractual obligations are set aside as to contracts of fraternal insurance. . . . If a local secretary goes on for a considerable period accepting dues after default and remitting them to the supreme officers, who accept them with knowledge that they were paid out of time, these would be facts from which a waiver might be inferred; the waiver being founded on the notion that the member was led by the course of dealing, into believing it was all right to pay his dues after the regular date." McMahon v. Maccabees, 151 Mo. 522, 52 S. W. 384, is cited in support of this. In the case at bar, however, there is no evidence that the supreme governing body had any notice whatever of any such action on the part of the clerk or secretary of this subordinate council. Moreover, it is clear, on the uncontradicted evidence, that the clerk of the grove accepted payment from the husband of the member in reliance upon that husband's statement that his wife was then "all right." The laws of the order expressly provided that if accepted even on the faith of a written, formal cer-

tificate of health, and it develops that the statement was untrue, the acceptance is not binding. The trial court sent the case to the jury on the theory that there was evidence of waiver. The waiver here relied upon and pleaded and upon the existence of which the court instructed the jury at the instance of plaintiffs, is not sustained by any substantial evidence in the case. No knowledge of any of the acts of the clerk or secretary of the subordinate council which are claimed as waiver are brought home to the governing body of the order, and this action is against the order, not even against the clerk of the subordinate grove, assuming that the latter had knowledge of these acts, of which there is no proof whatever. The defense of waiver is practically the only one under which the plaintiff can be said to have any standing. That failing, as we hold it did, we are compelled to hold that plaintiff cannot recover. The judgment of the circuit court must be, and accordingly is reversed. *Nortoni* and *Allen, JJ.,* concur.

